E-FILED
Friday, 03 May, 2013  05:03:08 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

CHARLES W. AMPADU, M.D.,            )
                                    )
          Petitioner,               )
                                    )
     v.                             )     No. 12-3285
                                    )
UNITED STATES CITIZENSHIP           )
AND IMMIGRATION SERVICES,           )
DISTRICT DIRECTOR,                  )
                                    )
          Respondent.               )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Petitioner, Charles W. Ampadu, MD, has filed a Petition to Amend Certificate of Naturalization (Petition).  See d/e 2.  Petitioner's Certificate of Naturalization currently bears the birthdate of July 17, 1949.  He seeks an Amended Certificate of Naturalization bearing what he alleges is his true birthdate of July 17, 1956.  Respondent, the District Director of the United States Citizenship and Immigration Services, has filed a Motion to Dismiss in which Respondent argues this Court does

not have subject-matter jurisdiction to amend Petitioner's Certificate of Naturalization.  See d/e 21.  For the reasons set forth below, the Court determines that it has jurisdiction to amend Petitioner's Certificate of Naturalization pursuant to Federal Rule of Civil Procedure 60(b)(6). Therefore, Respondent's Motion to Dismiss is denied.

## I. BACKGROUND

The Petition alleges as follows.

Petitioner was born in Ghana in the mid-1950's.  Petitioner had seven siblings.  Neither Petitioner's nor his siblings' exact dates of birth were contemporaneously recorded with any government officials.  All dates of birth for Petitioner and his siblings were approximated.

After graduating high school in 1974, Petitioner was invited to the United States to explore options to continue his education at the post-secondary level.  In order to travel to the United States, Petitioner needed a Ghanaian passport and a United States visa.  Both were difficult to obtain because of the state of Ghana's government at that time.

At the time, the Ghanaian government was marked by mismanagement and corruption.  This directly impacted Petitioner and his family's efforts to help him pursue his dream of visiting the United States.  In order to obtain a Ghanaian passport, Petitioner's father had to pay a bribe to a person who took two of Petitioner's photographs and money.  Three months later, Petitioner's father received Petitioner's passport with a visa stamp.  The passport listed Petitioner's birth year as 1949.  Although the family did not record Petitioner's exact birthdate and approximated it to be July 17, the family believed the birth year was probably 1956, not 1949.  However, because of the commitment of a significant portion of the family's resources for airfare and the lack of time to correct the error before Petitioner's scheduled departure for the United States, Petitioner's father instructed him to get on the plane with his Ghanaian passport and to try to correct the error once he got to the United States.  Petitioner did as he was told.

Petitioner first entered the United States on August 19, 1974, as a B-2 visa holder.  According to the Department of State, a B-2 visa is a

non-immigrant visa for people who want to enter the United States temporarily for tourism, pleasure, or visiting.  See http://travel.state.gov/visa/temp/types/types_1262.html (last visited on May 3, 2013).  On September 23, 1974, Petitioner applied for a change of status to F-1, or non-immigrant student.  This application was denied.

In October 1975, Petitioner married Gwendolyn Wilder in Illinois.  Shortly thereafter, an I-130 immigrant visa petition to classify status of alien relative for issuance of immigrant visa was filed on Petitioner's behalf.  The I-130 petition was approved.

In December 1978, Petitioner filed his I-485 application for permanent resident status.  According to the Petition, Ghana remained in turmoil throughout the 1970s and 1980s.  The turmoil impacted the functioning of Ghana's internal government, its international functionality, and its ability to provide basic services to its citizens abroad.  In light of his lack of opportunity to correct his passport and his fear of returning to Ghana's turmoil and economic struggles, Petitioner processed his application for permanent residence in the United States

and did not disclose the facts relating to his approximated date of birth and birth year passport error.  In April 1979, Petitioner was granted permanent resident status.

Petitioner attempted to correct his passport when his Ghanaian passport expired around 1984.  He traveled to Washington D.C. and visited the Ghanaian Embassy where he was told he could not apply for a passport unless he paid a bribe.  Petitioner could not afford to pay the bribe as he was working various low-paying jobs and attending school.  It became clear to Petitioner that he would not be able to correct the birthdate error with the Ghanaian government.  Therefore, when he filed his Application to File Petition for Naturalization on November 28, 1984, he listed his birth year of 1949 rather than his probable birth year of 1956.

On March 11, 1986, Petitioner completed his Petition for Naturalization.  The Petition for Naturalization listed July 17, 1949 as Petitioner's birthdate.  Petitioner was granted United States citizenship on April 26, 1986.

Over time, the conditions improved in Ghana and the government was more stable and able to provide basic services.  In 2007, Petitioner's family registered his birth with the Register of Births in Ghana and listed July 17, 1956 as his date of birth in order to provide Petitioner the documentation he believed was required to correct his official information with the United States government.

On December 29, 2007, Petitioner completed an application for a passport to reflect his July 17, 1956 birthdate.  On January 8, 2008, the United States Department of State issued a new passport reflecting the 1956 birth year.  However, on May 24, 2011, the Department of State issued a letter to Petitioner informing him that it was revoking that passport because it was issued in error.  The Department of State informed Petitioner that he could apply for a United States passport with an amended Certificate of Naturalization showing the July 17, 1956 date of birth.

On June 8, 2011, Petitioner filed an N-565 application for a new citizenship certificate with the United States Citizenship and

Immigrations Services.  On July 1, 2011, the application was denied

because no clerical error had been on the Certificate of Naturalization.

Petitioner filed the instant Petition to Amend his Certificate of

Naturalization to indicate his birth year is 1956 rather than 1949.

Respondent has filed a Motion to Dismiss under Federal Rule of Civil

Procedure 12(b)(1) alleging this Court lacks subject-matter jurisdiction to

consider the Petition.  Respondent further argues that Rule 60 of the

Federal Rules of Civil Procedure does not apply in this case due to the

length of time that passed and Petitioner's lack of diligence in correcting

his identity documents before he was naturalized.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to

dismiss a claim or suit on the ground that the court lacks subject-matter

jurisdiction.  Fed.R.Civ.P. 12(b)(1).  When ruling on a motion made

pursuant to Rule 12(b)(1), the court "must accept as true all well-pleaded

factual allegations, and draw reasonable inferences in favor of the

plaintiff."  Ezekiel v. Michel, 66 F.3d 894, 897 (7th Cir. 1995).  When a

defendant challenges subject-matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. Muscarello v. Ogle Cnty. Bd. of Commr's, 610 F.3d 416, 425 (7th Cir. 2010).

## III.  ANALYSIS

Respondent asks this Court to dismiss the Petition to Amend Certificate of Naturalization for lack of subject-matter jurisdiction. Respondent contends that the regulation 8 C.F.R. § 334.16(b) does not provide this Court jurisdiction to consider the Petition.  Respondent also claims Rule 60 of the Federal Rules of Civil Procedure does not permit the Court to amend the Certificate of Naturalization under the facts of this case.

Until 1990, the federal judiciary had exclusive jurisdiction to naturalize non-citizens.  Malineni v. United States Citizenship and Immigration Services, 2013 WL 466204, at *2 (E.D. Mich. Feb. 7, 2013).  However, "[i]n 1990, Congress transferred naturalization authority from the judiciary to the Attorney General."  McKenzie v.

<u>United States Citizenship and Immigration Services</u>, 2012 WL 5954193,

at *2 (W.D. Okla. Nov. 28, 2012) (citing the Immigration Act of 1990,

Pub. L. No. 101-649, Title IV, § 407(18)(D), 104 Stat. 5046 (1990)

(codified at 8 U.S.C. § 1421(a)).

The regulation at issue, 8 C.F.R. § 334.16(b), provided district

courts jurisdiction over petitions to amend errors in naturalization

documents after an individual has been granted citizenship.  Section

334.16(b) was repealed in November 2011.  Prior to being repealed, §

334.16(b) provided as follows:

> (b)  After final action on petition.  Whenever an application is made to the court to amend a petition for naturalization after final action thereon has been taken by the court, a copy of the application shall be served upon the district director having administrative jurisdiction over the territory in which the court is located, in the manner and within the time provided by the rules of court in which application is made.  No objection shall be made to the amendment of a petition for naturalization after the petitioner for naturalization has been admitted to citizenship if the motion or application is to correct a clerical error arising from oversight or omission.  A representative of the Service may appear at the hearing upon such application and be heard in favor of or in opposition thereto. When the court orders the petition amended, the clerk of court shall transmit a copy of the order to the district director for inclusion in the Service file.

Although the language of this regulation speaks of giving federal courts the power to make amendments to petitions for naturalization, courts have also used the regulation to amend certificates of naturalization.  See In re Weldeabzghi, 2013 WL 717755, at *5 (D. Minn. Feb 27, 2013) (citing cases).  Therefore, after Congress transferred naturalization jurisdiction to the executive branch, the judiciary only retained jurisdiction under § 334.16(b) to review petitions to amend naturalization documents issued by the court before 1990.  Malineni, 2013 WL 466204, at *2.  However, some district courts "continued reviewing petitions to amend post-1990 naturalization certificates issued by executive agencies."  Id. (citing cases).

Here, Respondent argues the Court does not have subject-matter jurisdiction pursuant to § 334.16.  When faced with a challenge to subject-matter jurisdiction, courts have come to differing conclusions on whether § 334.16(b) gives the court subject-matter jurisdiction.  Some courts have concluded that § 334.16(b) provides a basis for subject-matter jurisdiction to order amendments to certificates of naturalization

as long as the petition to amend was filed before § 334.16(b) was

repealed.  See Weldeabzghi, 2013 WL 717755, at *6 (finding that courts

have jurisdiction to order amendments to certificates of naturalization

when the petition to amend was filed before § 334.16(b) was repealed.

The court noted that its holding does not create jurisdiction over future

petitions to amend filed under § 334.16(b) after it was repealed);

Lashkariani v. United States Citizenship and Immigration Services, 2012

WL 3615460, at *3 (D. Nev. August 21, 2012) (same).  Other courts

have concluded § 334.16(b) does not give subject-matter jurisdiction over

petitions filed with the court after the regulation was repealed.  See

Malineni, 2013 WL 466204, at *2 (the court did not have subject-matter

jurisdiction because the complaint was filed after the repeal of § 334.16).

At least one court has found § 334.16(b) did not give the court subject-

matter jurisdiction to amend naturalization certificates because § 334.16

had been repealed even though the original petition to amend certificate

of naturalization was filed with the court before the date the regulation

was repealed.  See Nguyen v. Holder, 2012 WL 1854258, at *1-2 (D.

Ariz. April 18, 2012).

Noticeably absent are any cases where a court has concluded it has subject-matter jurisdiction over a petition to amend a certificate of naturalization that was filed after § 334.16 was repealed.  In fact, as noted above, several of the courts that found subject-matter jurisdiction over petitions to amend naturalization orders made a point of noting that their holding does not create jurisdiction over future petitions to amend filed under § 334.16(b) after it was repealed.  See  Weldeabzghi, 2013 WL 717755, at *6; Lashkariani, 2012 WL 3615460, at *3.

Here, Petitioner filed his request for a new citizenship certificate with the United States Citizenship and Immigration Services before § 334.16 was repealed.  However, he did not file his Petition to Amend Certificate of Naturalization until August 20, 2012.[1]  Therefore, the Court declines to find subject-matter jurisdiction pursuant to § 334.16.

However, the Court does find that it has the authority to amend Petitioner's Certificate of Naturalization, albeit on a different basis.

---

[1] Petitioner filed the Petition in the Southern District of Illinois.  The case was transferred to this Court shortly thereafter.

Several courts, citing 8 U.S.C. § 1451(i) (1990),  have concluded that

they have jurisdiction to amend naturalization orders issued by the courts

before the Immigration Act of 1990 became effective.  That version of §

1451(i) sets forth a court's power to amend naturalization certificates as

follows:

> (i) Power of court to correct, reopen, alter, modify or vacate
> judgment or decree
>
> Nothing contained in this section shall be regarded as
> limiting, denying, or restricting the power of any
> naturalization court, by or in which a person has been
> naturalized, to correct, reopen, alter, modify, or vacate its
> judgment or decree naturalizing such person, during the term
> of such court or within the time prescribed by the rules of
> procedure or statutes governing the jurisdiction of the court to
> take such action.

8 U.S.C. § 1451(i) (1990).  Some courts have simply cited to 8 U.S.C. §

1451(i) (1990) and stated the court has jurisdiction to amend that

certificate of naturalization because the order naturalizing the petitioner

was a court order.  See In re Chehrazi, 2012 WL 3026537, at *2-3 (N.D.

Cal. July 24, 2012) (finding jurisdiction to amend the petitioner's

naturalization certificate where the petitioner was naturalized by court

order in 1980); <u>Kennedy v. United States Citizenship and Immigration Services</u>, 871 F. Supp. 2d 996, 1005 n.12 (N.D. Cal. 2012) (stating that "[g]iven that the [p]etitioner's [c]ertificate was issued pre–1990, there is no doubt that this Court has power to amend the certificate)[2].

In reaching their conclusions, both the <u>Chehrazi</u> and <u>Kennedy</u> courts relied on <u>Matter of Shrewsbury</u>, 77 F.3d 490 (9th Cir. 1996).  The <u>Shrewsbury</u> court reversed the portion of a district court's order in which the district court concluded it lacked jurisdiction to amend a pre-1990 naturalization order because the Immigration and Naturalization Act of 1990 transferred authority to naturalize citizens from the judiciary to the Attorney General.  The <u>Shrewsbury</u> court, citing 8 U.S.C. § 1451(I), stated that "because the order naturalizing this petitioner was a court order, the court had jurisdiction under the prior statute to amend it."  <u>Id.</u>

Respondent acknowledges that the <u>Shrewsbury</u> court held that "courts possess some jurisdiction to amend naturalization certificates

---

[2] The Court also notes that in <u>Kennedy</u>, 871 F. Supp. 2d at 1007, the United States Citizenship and Immigration Services conceded that the court had jurisdiction to grant a request to amend the birth date on the naturalization certificate because the petitioner was naturalized in 1984.

they ordered." <u>Respondent's Memorandum In Support of Motion to Dismiss</u>, d/e 22 at p. 9. Respondent then erroneously states that "<u>a</u> <u>later</u> panel of the Ninth Circuit found that this 'inherent authority' to set aside or alter naturalization certificates arises under Federal Rule of Civil Procedure 60." <u>Id.</u> (emphasis added) (citing <u>Magnuson v. Baker</u>, 911 F.2d 330, 335 n.11 (9th Cir. 1990)). However, <u>Shrewsbury</u> was decided almost six years after <u>Magnuson</u>. Clearly, <u>Magnuson</u> is not a "later panel."

While <u>Magnuson</u>, and other courts have cited 8 U.S.C. § 1451(I) (1990) as the source of the courts' inherent authority to set aside naturalization orders for any reason cognizable under Rule 60, <u>Shrewsbury</u> did not rely on Rule 60 to find the authority to amend the naturalization order. The <u>Shrewsbury</u> court did not mention Rule 60 in its opinion, let alone conduct an analysis of whether the requirements of Rule 60 were met. Therefore, under the reasoning in <u>Shrewsbury</u>, <u>Chehrazi</u>, and <u>Kennedy</u>, this Court has jurisdiction over Petitioner's Petition because he was naturalized by court order in 1986.

Several cases have gone still further than <u>Shrewsbury</u>, <u>Kennedy</u>, and <u>Chehrazi</u>.  These other cases have also cited to the language in 8 U.S.C. § 1451(I) (1990) as the source of a naturalization court's "inherent authority" to set aside judgments under Rule 60.  <u>See</u> <u>Jung Ai Shin v. United States Citizenship and Immigration Services</u>, 2013 WL 571781, at *2 (C.D. Cal. Feb. 13, 2013) (quoting <u>Magnuson v. Baker</u>, 911 F.2d 330, 335 n. 11 (9th Cir. 1990); <u>Boiko v. Holder</u>, 2013 WL 709047, at *2 (D. Colo. Feb. 26, 2013) (quoting <u>Magnuson v. Baker</u>, 911 F.2d at 335 n. 11); <u>see also</u> <u>McKenzie</u>, 2012 WL 5954193, at *1 n. 2 ("Because prior to 1990, the order naturalizing an individual was a court order, a court would have jurisdiction to amend a pre–1990 certificate of naturalization (naturalization order) pursuant to Federal Rule of Civil Procedure 60.").  Both the <u>Boiko</u> and <u>Jung Ai Shin</u> courts analyzed whether the respective petitioners in those cases met the requirements of Rule 60.  <u>Boiko</u>, 2013 WL 709047, at *2; <u>Jung Ai Shin</u>, 2013 WL 571781, at *2-3.

Here, Petitioner claims that this Court has subject-matter

jurisdiction to amend his naturalization certificate pursuant to Rule 60(b)(6).   Under Rule 60(b)(6), the court may relieve a party from a final judgment, order or proceeding for "any reason that justifies relief." Fed.R.Civ.P. 60(b)(6).  Such a motion must be made within a "reasonable time."  Fed.R.Civ.P. 60(c)(1).   Motions for relief under several other sections of Rule 60(b) contain a one-year statute of limitation.  See Fed.R.Civ.P 60(c)(1) (stating that motions under Rule 60(b)(1), (2), and (3) must be made "no more than a year after the entry of judgment").

Respondent notes that the Seventh Circuit Court of Appeals has stated that Rule 60(b)(6) is a "catchall provision" that cannot be used if the asserted ground for relief falls within one of the grounds set forth in Rule 60(b)(1), 60(b)(2), or 60(b)(3).  To do so would render the one-year time limit that applies to motions brought pursuant to those provisions meaningless.  Respondent's Memorandum In Support of Motion to Dismiss, d/e 22 at p. 13 (citing Arrieta v. Battaglia, 461 F.3d 861, 865 (7th Cir. 2006)).  However, Petitioner's Petition cannot be

appropriately brought under Rule 60(b)(1), (2), or (3). Motions brought pursuant to Rule 60(b)(1) are brought for mistake, inadvertence, surprise, or excusable neglect. Motions brought pursuant to Rule 60(b)(2) are brought because of newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b). Motions brought pursuant to Rule 60(b)(3) allege fraud, misrepresentation, or misconduct <u>by</u> <u>an</u> <u>opposing</u> <u>party</u>. This case does not fit within any of those situations

Relief under Rule 60(b)(6) requires a showing of "'extraordinary circumstances' justifying the reopening of a final judgment." <u>Arrieta</u>, 461 F.3d at 865 (citation omitted). Respondent contends that extraordinary circumstances do not exist and that Petitioner was not diligent in correcting his identity documents. Moreover, Respondent states that while the political circumstances in Ghana and Petitioner's limited budget may have made it difficult for Petitioner to correct his Ghanaian identity documents, Petitioner took the expedient step of concealing his true birthdate and then reaped the immigration benefits of doing so. For

these reasons, Respondent claims relief under Rule 60(b)(6) is

inappropriate.  This Court disagrees.

As Petitioner notes, petitions to amend certificates of naturalization

have been granted in cases where "the petitioner admitted that he knew

that the date of birth that he supplied to United States immigration

officials was not correct."  Chehrazi, 2012 WL 3026537 at *3 (citing

Hussain v. United States Citizenship and Immigration Services, 541 F.

Supp. 2d 1082, 1087 (D. Minn. 2008); Varghai v. INS, Dist. Dir., 932

F. Supp. 1245, 1247 (D. Or. 1996); Kouanchao v. United States

Citizenship and Immigration Services, 358 F.Supp.2d 837, 838 (D.

Minn.2005)).  Moreover, the passage of time in and of itself is not reason

to deny a petitioner the opportunity to obtain relief.  In Jung Ai Shin, the

petitioner, a United States citizen naturalized in 1980, discovered her

correct birth year was 1954 instead of the 1956 birth year that was

reflected on all of her naturalization documents when her mother

informed her of this information in 1989.  Jung Ai Shin, 2013 WL

571781, at *1.  After learning this fact, the petitioner took steps to

change her birth date in South Korea and received a favorable ruling in 1990.  Id.  However she did not pursue the correction of her United States' records until 2008 because she "was busy taking care of [her] family," and "felt overwhelmed by the process at the time."  Id.  While recognizing the petitioner waited longer than she should have, the court determined that not only did she bring her petition in a reasonable time under the "unique circumstances" of the case, the court granted her petition to amend the birth date on her naturalization certificate because there was no prejudice to the defendant, the public's interest in having accurate records on vital statistics, and the burden on the petitioner from having inconsistent records.  Id. at *3-4.

The Petition sets forth the many obstacles Petitioner faced in trying to get his birthdate corrected with Ghanaian officials.  These obstacles included turmoil that impacted the functioning of Ghana's internal government and its ability to provide basic services to its citizens abroad and the inability to pay a bribe to get his Ghanaian  documents corrected in 1984.

However, once Petitioner's family was finally able to register his correct birthdate of July 17, 1956 with the Register of Births in Ghana in 2007, Petitioner completed an application for a United States passport that reflected his correct birthdate.  The Department of State issued him a passport with the correct birthdate.  When the Department of State revoked that passport because of the discrepancy between the birthdate on his passport application and the birthdate on his Certificate of Naturalization, Petitioner filed his N-565 application for a new citizenship certificate with the United States Citizenship and Immigration Services.  That application was denied because no clerical error was made on the Certificate of Naturalization.  Petitioner then filed his Petition with the Court in August 2012.

Petitioner was certainly more diligent than the petitioner in Jung Ai Shin, 2013 WL 571781, who did not pursue the correction of her United States records until 2008, 18 years after she corrected her South Korean records, because she "was busy taking care of [her] family," and "felt overwhelmed by the process at the time."  Moreover, there are similar

considerations to those the court found important in <u>Jung Ai Shin</u>.  Here,

Respondent has not alleged it will be prejudiced[3] and the public interest

in having accurate records on vital statistics is the same as it was in <u>Jung

Ai Shin</u>.  Accordingly, the Court concludes it has subject-matter

jurisdiction pursuant to Rule 60(b)(6) to amend Petitioner's Certificate

of Naturalization.

## III. CONCLUSION

THEREFORE, the Court has subject-matter jurisdiction over

Petitioner's Petition to Amend Certificate of Naturalization.

Respondent's Motion to Dismiss (d/e 21) is DENIED.  This matter is

referred to Judge Cudmore for further pre-trial proceedings.

IT IS SO ORDERED.

ENTER: May 3, 2013.

FOR THE COURT:

<u>  s/ Sue E. Myerscough        </u>
SUE E. MYERSCOUGH
United States District Judge

---

[3] The Court notes Petitioner is seeking to have his Certificate of Naturalization amended to show he is younger than it currently shows.